IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLLEEN GERBER, | : | Civ. No. 1:23-CV-2039 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Bloom) |
| DAUPHIN COUNTY | : | |
| TECHNICAL SCHOOL, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.   Introduction

This case comes before us for consideration of a motion to dismiss filed by the defendants, Dauphin County Technical School, Dr. Karen Pflugh, and Andrea Bennett. (Doc. 13).  The *pro se* plaintiff, Colleen Gerber, was an employee of Dauphin County Technical School ("DCTS") as an English Learning Support Teacher. (Doc. 15-7).  Gerber brought this action against the defendants, alleging that they discriminated against her because of her disability and age and failed to accommodate her disability. (Doc. 1 at 5).  Gerber's claims arise from a series of events that culminated in her retirement and the school's denial of her subsequent request to rescind her retirement.  Gerber filed her complaint

on December 8, 2023, alleging claims of disability discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act ("ADA"), and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). (Doc. 1 at 5). The defendants now move to dismiss the complaint, arguing that Gerber has failed to state a claim upon which relief can be granted. (Doc. 13).

After consideration, we conclude that the plaintiff has sufficiently stated a claim for relief under the ADA for disability discrimination. However, we find that the plaintiff has failed to state a claim upon which relief can be granted as to her ADA failure to accommodate and retaliation claims, as well as her ADEA claim. Accordingly, the motion to dismiss will be granted in part and denied in part as set forth below.

## II.   Background

Gerber was an employee of DCTS as an English Learning Support teacher who was diagnosed with Amyotrophic Lateral Sclerosis ("ALS"), a terminal illness, in August 2022. (Doc. 1 at 5; Doc. 5-1 at 2).  ALS is a neurodegenerative disease that affects nerve cells in the brain and spinal cord. (Doc. 1 at 5).

Prior to her diagnosis, in December 2021, Gerber submitted a complaint of age discrimination to the defendants. (Doc. 5-2 at 1). The same month, Gerber submitted a doctor's note to request that she be provided with a quiet place away from others to avoid exposure to COVID-19 due to chronic medical issues. (Doc. 5-10). The school granted this accommodation after Gerber provided two doctor's notes. (Doc. 5-3 at 2). Prior to the accommodation being granted, Gerber had to move classrooms, and she asserts the school suggested that she eat lunch in her car to avoid exposure to COVID-19. (*Id.*).

In August of 2022, following her ALS diagnosis, Gerber requested Family Medical Leave Act ("FMLA") information and was determined to be eligible for FMLA leave. (Doc. 5-1 at 2). The FMLA recertification paperwork completed by Gerber's medical provider indicated that Gerber was incapacitated and could not perform essential job functions such as walking, lifting, or bending. (Doc. 5-22 at 1-2). Additionally, the paperwork noted that Gerber would be incapacitated for a continuous period and would be undergoing physical therapy. (*Id.* at 1). According to Gerber's provider, over the next six months, episodes of incapacity

were estimated to occur three to five times per week and last approximately eight hours per episode. (*Id.*).

In September of 2022, Gerber presented Bennett with a doctor's note requesting an accommodation to use the elevator and to be excused from work for five days in October. (Doc. 5-22 at 2). Gerber was granted the accommodation but was not permitted to miss work. (Doc. 5-19; Doc. 5-3 at 4). That same month, during a meeting with Special Education Supervisor Jan Zeager and secretary Betsy Gates, Gerber alleges that Zeager harassed her by mocking her use of a cane. (Doc. 5-2 at 2). Later that month, she asserts that Bennett requested a FMLA recertification after 28 days, even though the FMLA only permits requests for recertification after 30 days. (Doc. 5-3 at 5; Doc. 21). Gerber was told in that request that they would decide on the continuing designation of her requested absences as FMLA leave, but Gerber never received such determination. (*Id.*).

After learning of the severity of her illness, Gerber also approached Bennett in September of 2022 regarding her ALS. (Doc. 1 at 5). Gerber inquired into the disability insurance that the school provides to their employees. (*Id.*). The complaint asserts that Bennett told Gerber that the

school does not offer short- or long-term disability benefits. (*Id.*).  Gerber further asserts that she asked Bennett how the Consolidated Omnibus Budget Reconciliation Act ("COBRA") worked, and Bennett allegedly reassured Gerber that she should not worry about COBRA because she would be provided the school's insurance at a prorated amount for three years after her retirement. (*Id.*).  Gerber asserts that with that information, she weighed her options and ultimately decided to retire. (*Id.*).  According to Gerber, she was to take sick leave every day from October 2, 2022, through her retirement date of December 1, 2022. (Doc. 5-3 at 4).  In October 2022, Gerber sent DCTS a letter noticing her intent to retire, which was accepted by the Joint Operating Committee and would become effective December 1, 2022. (Doc. 1 at 5; Doc. 5-24).

In November 2022, Bennett conducted an exit interview in which she allegedly apologized for providing incorrect information to Gerber regarding insurance coverage and disability benefits. (Doc. 1 at 5).  According to Gerber, at this meeting Bennett informed her that she would not receive pro-rated insurance as she had initially indicated, and that the school did carry long-term disability insurance. (*Id.*).  Based on this information, Gerber submitted a letter to rescind her retirement,

which was denied. (Docs. 5-26, 5-27). Bennett contends that she did not offer information about the long-term disability insurance because it required a 3-month wait period to enroll, which would extend past Gerber's anticipated December 2022 separation date. (Doc. 5-27). Gerber asserts that the school would have been required to pay fifty percent of her salary during the wait period. (Doc. 1 at 5). After requesting to return to work on November 29, 2022, Gerber claimed that Dr. Pflugh harassed her by stating that if Gerber returned to work, she would have to sit in Pflugh's office all day. (Doc. 1 at 5). Gerber further alleges that Pflugh accused her of having her doctor lie for her regarding her disability. (*Id.*).

Based on these assertions, Gerber brings claims against the defendants under the ADA, 42 U.S.C. §§ 12102, *et seq.*, and the ADEA, 29 U.S.C. § 623(a), alleging that the defendants discriminated against her due to her disability and age and failed to accommodate her. (Doc. 1 at 5). Gerber argues that the school should have provided her with the long-term disability benefit she requested, paid for, and was entitled to as an employee. (*Id.*). She also argues that the defendants harassed her, denied her request for a reasonable accommodation, provided her with

incorrect information, and actively and/or constructively discharged her from employment. (Doc. 5-2 at 2).

The defendants have now moved to dismiss the complaint, arguing that Gerber's claims fail as a matter of law. (Doc. 13). After consideration, we find that while the *pro se* complaint, liberally construed, states a claim for disability discrimination under the ADA, the remaining claims fail as currently pleaded. Accordingly, the defendants' motion to dismiss will be granted in part and denied in part.

### III.  Discussion

#### A. Motion to Dismiss — Standard of Review

The defendants have filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under federal pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the

complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).   However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the Third Circuit Court of Appeals has aptly summarized:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

## B. The Defendants' Motion to Dismiss will be Granted in Part and Denied in Part.

Our review of the complaint reveals that, liberally construed, Gerber has sufficiently stated a claim for relief under the ADA for

disability discrimination. However, we further conclude that Gerber has failed to state a claim of upon which relief can be granted as to her ADA failure to accommodate and retaliation claims, as well as her ADEA claim.

1. **Gerber's Complaint Adequately States a Claim for Disability Discrimination under the ADA.**

The ADA prohibits employers from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  An employer unlawfully discriminates if the employer takes adverse action that is motivated by the individual's disability and the employer's belief that the individual had a disability, or the employer fails to make reasonable accommodations. *Fuoco v. Lehigh Univ.,* 981 F. Supp. 352, 361 (E.D. Pa. 2013).

Therefore, to state a prima facie case of discrimination, a plaintiff must plead facts to show: "(1) that [s]he is a disabled person within the meaning of the ADA; (2) that [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation;

and (3) [s]he has suffered an otherwise adverse employment decision as a result of the discrimination." *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 305-06 (3d Cir. 1999) (quoting *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998) (internal quotations omitted)). Discrimination under the ADA encompasses adverse actions motivated by prejudice and failing to make reasonable accommodations for a plaintiff's disabilities. *Id.* at 306. The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

To be "otherwise qualified," courts assess if the individual "satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.," and "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Gaul*, 134 F.3d at 580. The plaintiff must allege that she is able to perform the job without a reasonable accommodation or specify what reasonable accommodation is necessary for her to complete her job's

essential functions. *Kiniropoulos v. Northampton Cnty. Child Welfare Serv.*, 917 F. Supp. 2d 377, 387 (E.D. Pa. 2013).

Finally, in the employment context, an adverse employment decision is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001). Voluntary resignation can only constitute an adverse employment action is if it rises to the level of a constructive discharge, which is an employee's decision to resign because of intolerable work conditions. *Larochelle v. Wilmac Corp.,* 769 F. App'x 57, 60 (3d. Cir. 2019); *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). The following factors are considered when assessing if work conditions are so intolerable that it is reasonable for an employee to resign: "whether the employer (1) threatened the employee with discharge or urged or suggested that she resign or retire, (2) demoted her, (3) reduced her pay or benefits, (4) involuntarily transferred her to a less desirable position, (5) altered her job responsibilities, or (6) gave unsatisfactory job evaluations." *Clowes v. Allegheny Valley Hospital*, 991 F.2d 1159, 1161 (3d Cir. 1993).

In this case, Gerber asserts that DCTS, Bennett, and Pflugh discriminated against her, a disabled person, when they failed to provide her with accurate information regarding long-term disability insurance, forcing her to retire. (Doc. 1 at 5). Gerber also asserts that Bennett did not want to pay her, so she did not provide Gerber with correct information. (*Id.*). Therefore, Gerber contends that she should have been permitted to rescind her retirement. (*Id.*). The defendants argue that she has not asserted any facts to show that she is otherwise qualified to perform her job functions with or without reasonable accommodation, as her provider indicated she is indefinitely incapacitated. (Doc. 17 at 4-5). However, we conclude that Gerber has sufficiently alleged a claim for disability discrimination under the ADA.

The defendants do not dispute that Gerber is disabled within the meaning of the ADA, as she asserts that she suffers from ALS. It is further undisputed that Gerber possessed the necessary education, employment experience, and skills needed to perform her job. Additionally, Gerber has alleged that she would be able to perform the essential functions of her job with a reasonable accommodation. Gerber's complaint alleges that she requested FMLA leave to allow her

13

intermittent absences from school, so she could continue with her employment while handling her episodes of incapacity. This accommodation would allow her to take intermittent leave to receive treatment for her condition and return to work to perform her job functions as required. *See Capps v. Mondelez Global, LLC*, 847 F.3d 144, 156-57 (3d Cir. 2017) ("[A] request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA[.]"); *Dreibelbis v. County of Berks*, 438 F. Supp. 3d 304, 319 (E.D. Pa. 2020). Accordingly, we conclude that Gerber has sufficiently pleaded that she is a "qualified individual" for purposes of her disability discrimination claim.

Regarding the final element of this claim, Gerber has sufficiently pleaded facts to show an adverse employment action at this stage. While Gerber voluntarily resigned from her employment at DCTS, she asserts that she was provided with false information about insurance and benefits, which forced her to retire. Additionally, because of the lack of information she was provided, she felt that her only option was to retire. *See Clowes*, 991 F.2d at 1161 (providing forced retirement as an example of a constructive discharge). Further, "[c]onstructive discharge claims are

highly fact-specific and, generally, are not appropriate for judgment prior to discovery." *Gross v. Hatboro-Horsham Sch. Dist.*, 2023 WL 4867423, at *8 (E.D. Pa. July 31, 2023) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 233 n.7 (3d Cir. 2006)). Accordingly, liberally construing the *pro se* plaintiff's complaint, we conclude that Gerber has sufficiently stated a claim for relief at this stage under the ADA for disability discrimination, and we will deny the motion to dismiss as to this claim.

### 2. Gerber's Complaint Fails to State a Claim for Failure to Accommodate.

The ADA also provides that an employer discriminates against a qualified individual with a disability when the employer fails to make "reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." *Williams v. Phila. Hous. Auth. Police Dept.*, 380 F.3d 751, 761 (3d Cir. 2004) (quoting *Taylor*, 184 F.3d at 306) (internal quotations and citations omitted). To determine the appropriate reasonable accommodation, the ADA requires that an employer and employee engage in an interactive process. *Taylor*, 184 F.3d at 312. Specifically, "[o]nce a qualified individual with a disability has requested

provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation." *Id.* at 311 (quoting 29 C.F.R. pt. 1630, App. § 1630.9 at 359) (quotations omitted).

To establish that the defendant did not properly engage in the interactive process, plaintiff must demonstrate that: "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for [] her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 330-31 (3d Cir. 2003); *Taylor,* 184 F.3d at 319-20.

In this case, Gerber asserts that DCTS, Bennett, and Pflugh failed to accommodate her by denying her long-term disability insurance. For their part, the defendants contend that they did not provide Gerber with this information because the long-term disability insurance period policy has a 90-day elimination period, which would extend past Gerber's anticipated December 2022 retirement date. Thus, the defendants argue

16

that the information was not provided to Gerber because it was not available to her.

Regardless of Bennett's decision to withhold information about long-term disability, we conclude that Gerber's request for information about disability benefits is not a reasonable accommodation request under the ADA. *See Pezza v. Middletown Twp. Pub. Sch.*, 2023 WL 8254431, at *16 (D.N.J. Nov. 29, 2023) (concluding that the plaintiff's inquiry into the availability of short term disability did not amount to a reasonable accommodation request under the ADA); *see also Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000) (finding that a request for continued payment of disability insurance is not a reasonable accommodation under the ADA).  Here, Gerber was simply inquiring into her eligibility for long-term disability insurance, which cannot be recognized as tantamount to a reasonable accommodation request under the ADA.[1]  Accordingly, Gerber has failed to plead facts to support a

---

[1] To the extent Gerber claims that her request for intermittent FMLA leave qualified as a reasonable accommodation, it is undisputed that her request for FMLA leave was granted. Accordingly, the defendants did, in fact, accommodate this request.

failure to accommodate claim, and the motion to dismiss this claim will be granted.

### 3. The Plaintiff Fails to State an ADA Retaliation Claim.

The ADA retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge" under the ADA. 42 U.S.C. § 12203(a). Therefore, to state a prima facie case of retaliation under the ADA, a plaintiff must show (1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Williams*, 380 F.3d at 759.

A failure to accommodate claim cannot also be characterized as a retaliation claim. *Pagonakis v. Express LLC*, 315 F. App'x 425, 431 (3d Cir. 2009). In fact, courts in this district have dismissed ADA retaliation claims based only on an employer's denial of a requested accommodation. *See e.g.*, *Garner v. Sch. Dist. Of Phila.*, 63 F. Supp. 3d 483, 600 (E.D. Pa. 2012) (dismissing the plaintiff's retaliation claim that was a "repackaged"

statement of his failure to accommodate claim); *Semcheski v. Cunningham Lindsey U.S., Inc.*, 2018 WL 3417219, at *6 (M.D. Pa. July 13, 2018) (dismissing the plaintiff's retaliation claim where the claim was, in substance, a reiteration of his failure to accommodate claim); *Barnard v. Lackawanna County*, 2017 WL 4233030, at *7 (M.D. Pa. Sept. 25, 2017) (dismissing a retaliation claim that was not "separate and apart from the discrimination and failure to accommodate claims"); *see also Williams*, 230 F. Supp. 2d at 639 (dismissing a retaliation claim that was, in substance, a claim of a failure to accommodate).

Here, Gerber asserts that the defendants retaliated against her when they denied her information about long-term disability insurance. However, we conclude that Gerber's allegations are a mere repackaging of her failure to accommodate claim, and thus, cannot constitute a retaliation claim under the ADA. Further, to the extent Gerber relies on her allegations that her workspace was made more invasive and she lost her lunch period, these were actions taken before any alleged protected activity and cannot form the basis of a retaliation claim. Accordingly, we will grant the defendants' motion to dismiss as to this claim.

### 4. <u>The Plaintiff's ADEA Claim will be Dismissed.</u>

The ADEA prohibits employers from discriminating against employees based on age. Title 29, U.S.C. § 623(a)(1). A plaintiff must demonstrate that she is at least 40 years old, she suffered an adverse employment decision, she is qualified for the position, and the employer hired an employee who is sufficiently younger to show an inference of age discrimination. *Novak v. Posten Taxi Inc.,* 386 F. App'x 276, 278 (3d Cir. 2010). An adverse employment action must be a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc.,* v. Ellerth, 524 U.S. 742, 761 (1998). Further, age must be the "but for" cause of the adverse employment action. *Hazen Paper Co. v. Biggens*, 507 U.S. 604, 610 (1993).

Liberally construed, Gerber's complaint appears to vaguely assert a claim under the ADEA, alleging that she was discriminated against because of her age when she was forced to share a classroom, was used as a support teacher for science classes, was forced to supply doctor's notes, and was required to withstand multiple meetings and public

interrogation about her health. (Doc. 5-3 at 1-2; Doc. 5-2 at 1).  To the extent she is asserting such a claim, Gerber has sufficiently alleged her membership in the protected class for ADEA claims, as she has stated she was fifty-nine years old as of February 2023. However, Gerber fails to plead facts to support the remaining elements of an ADEA claim. Gerber alleges in a conclusory fashion that a "younger peer" received her own space without asking for it, while she had to go through multiple meetings and provide multiple doctor's notes to acquire her accommodation. However, she has not alleged the age of her younger peer to permit an inference that her peer was sufficiently younger. *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 699 (3d Cir. 1995).  Further, neither of the alleged adverse actions—a classroom relocation and being required to teach an unpreferable class—demonstrate a significant change in Gerber's employment status or benefits. Finally, Gerber has failed to allege any facts from which we can infer that the actions taken were because of her age. Accordingly, Gerber's ADEA claim fails as currently pleaded and will be dismissed.

However, while we have concluded that several of Gerber's claims fail as currently pleaded, recognizing that Gerber is a *pro se* litigant, we

will dismiss these claims without prejudice to afford Gerber an opportunity to amend her complaint to remedy the deficiencies we have identified in this Memorandum Opinion. *See Fletcher-Hardee Corp. v. Pote Concrete Contractors*, 482 F.3d 247, 253 (3d Cir. 2007); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

## IV.   Conclusion

For the foregoing reasons, the defendants' motion to dismiss the complaint (Doc. 13) will be GRANTED IN PART AND DENIED IN PART as follows:

1. The motion will be DENIED as to Gerber's ADA discrimination claim; and

2. The motion will be GRANTED as to Gerber's ADA failure to accommodate and retaliation claims, as well as her ADEA claim. These claims will be dismissed without prejudice to allow Gerber leave to amend her complaint.

An appropriate order follows.


*s/ Daryl F. Bloom*
Daryl F. Bloom
United States Magistrate Judge